UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| KRISTY PARRINELLO, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 4:18-CV-202 NAB |
| ANDREW M. SAUL[1], | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Kristy Parrinello's appeal regarding the denial of disability insurance benefits and supplemental security income under the Social Security Act. The Court has jurisdiction over the subject matter of this action under 42 U.SC. § 405(g). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 8.] The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**Issues for Review**

Parrinello presents three alleged errors for review. She asserts that the ALJ erred by failing to find that her carpal tunnel syndrome and mental impairments were severe impairments. She also asserts that the ALJ improperly discounted her credibility specifically regarding her

---

[1] At the time this case was filed, Nancy A. Berryhill was the Acting Commissioner of Social Security. Andrew M. Saul became the Commissioner of Social Security on June 4, 2019. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Andrew M. Saul for Nancy A. Berryhill in this matter.

activities of daily living. Finally, she states that the hypothetical to the vocational expert was not proper, because the RFC was not supported by substantial evidence and did not include all of her impairments. The Commissioner contends that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

## Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). The Court must affirm the Commissioner's decision so long as it conforms to the

law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).

## Discussion

**Severe Impairments**

First, Parrinello asserts that the ALJ failed to find that her carpal tunnel syndrome and her mental impairments of major depressive disorder, anxiety, and bipolar disorder were severe impairments. After the ALJ has determined that a claimant is not engaged in substantial gainful activity, the ALJ then determines whether the claimant has a severe impairment or combination of impairments that has or is expected to last twelve months or will result in death. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(i)-(ii), 416.909, 416.920(a)(4)(i)-(ii)[2]. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms. 20 C.F.R. §§ 404.1508, 416.908. To be considered severe, an impairment must *significantly* limit a claimant's ability to do basic work activities. *See* 20 C.F.R §§ 404.1520(c), 416.920(c). "Step two [of the five-step] evaluation states that a claimant is not disabled if his impairments are not severe." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citing *Simmons v. Massanari,* 264 F.3d 751, 754 (8th Cir. 2001)). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* at 707. "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id.* (citing *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007)). "It is the claimant's burden to establish that his impairment or combination of impairments are severe. *Kirby*, 500 F.3d at 707 (citing

---

[2] Many Social Security regulations were amended effective March 27, 2017. Per 20 C.F.R. §§ 404.614, 404.1527, 416.325, 416.927, the court will use the regulations in effect at the time that this claim was filed.

3

*Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000)). "Severity is not an onerous requirement for the claimant to meet, . . . but it is also not a toothless standard." *Kirby*, 500 F.3d at 708.

### 1. Carpal Tunnel Syndrome

The ALJ found that Parrinello had the severe impairments of fibromyalgia, rheumatoid arthritis, sacroiliitis, and tendinitis of the left shoulder. The ALJ found that Parrinello's carpal tunnel syndrome was mild and not a severe impairment. (Tr. 13.) In support, the ALJ stated that in June 2014, she did not display any motor weakness, neurologic abnormalities, or any evidence to show erosion in an x-ray, and had only mild findings in electrodiagnostic testing. (Tr. 12-13.) The ALJ noted that she had a normal bilateral hands X-ray in 2014. (Tr. 352-56.) A nerve conduction study in 2016 indicated mild carpal tunnel syndrome in her right arm at the elbow. (Tr. 466-68.)

Parrinello's application identified arthritis and difficulty using hands due to joint pain in her application. (Tr. 180.) Parrinello wrote in her Function Report that she had trouble raising her arms above her head and it hurt to use her hand, including when stirring and chopping. (Tr. 204-205, 208.) During her testimony, she testified that she had carpal tunnel syndrome and could not feel her fingertips during her 2013 pregnancy. (Tr. 37.) She also testified that her hands and wrists hurt too bad to wash her hair and she could only wash 1 or 2 dishes before her wrists and hands were hurting. (Tr. 42.) Finally, she testified that she had pain throughout her body, including her elbows, wrists, and hands. (Tr. 47.)

After a careful review of the record, the Court finds that the ALJ's finding that Parrinello's carpal tunnel syndrome was not a severe impairment is supported by substantial evidence in the record as a whole. First, a diagnosis of carpal tunnel syndrome does not always require manipulative limitations to be included in an RFC determination. *See Cypress v. Colvin*,

807 F.3d 948, 951 (8th Cir. 2015) (ALJ did not have to include manipulative limitations in RFC determination where claimant was diagnosed with moderate to severe bilateral carpal tunnel syndrome, because claimant retained full range of motion and full muscle strength). The record contains no medical evidence that Parrinello's carpal tunnel syndrome more than minimally impacted her ability to perform basic work activities. *Halton v. Astrue*, 689 F.Supp.2d 1148, 1167-68 (E.D. Mo. March 15, 2010). The medical record indicated that Parrinello had full muscle strength and normal range of motion of her upper extremities during most of her medical examinations. (Tr. 240, 249, 314, 320, 321, 331, 336, 341, 438, 463-64.) For these reasons, the Court finds that the ALJ's finding of non-severe impairment was supported by substantial evidence in the record as a whole.

    **2.    Mental Impairments**

Parrinello also asserts that the ALJ erroneously found that her mental impairments of major depressive disorder, anxiety, and bipolar disorder were non-severe impairments. The ALJ stated that these impairments did not cause more than minimal limitation in Parrinello's ability to perform basic work activities based on findings of mild limitations in the areas of understanding, remembering, and applying information; interacting with others; concentration, persistence or pace; and adapting or managing oneself. (Tr. 13.)

Parrinello first reported anxiety, because she might have to get rid of her dog due to a new fee imposed by her landlord in June 2013. (Tr. 264-65.) She reported that her dog keeps her calm so her doctor recommended that she keep the dog for "medical reasons." (Tr. 265.) In October 2013, she again reported anxiety, difficulty concentrating, excessive worry, fatigue, insomnia, and irritability. (Tr. 271.) Her doctor prescribed Xanax. (Tr. 273.) In December 2013, Parrinello reported that her anxiety was mild and improving. (Tr. 274.) In March 2015,

5

Dr. Michael Stacy, a state agency psychologist opined that the evidence confirms the mental impairments alleged, but there are minimal mentally based functional limitations. (Tr. 65.) Dr. Patrick Oruwari, a psychiatrist, diagnosed Parrinello with agoraphobia with panic disorder, anxiety, and bipolar disorder II during her treatment, which began in 2015. (Tr. 427.) He continued treating her through May 2016. Dr. Oruwari's notes are sparse and only include Parrinello's demographic information, diagnosis, and prescription. Parrinello's mother completed a third-party function report and noted that Parrinello experienced social anxiety and does not handle stress or changes in routine well. (Tr. 194-95.)

In her testimony, Parrinello stated that she was unable to return to work because her anxiety was very high and the thought of leaving her home and going out to do the job caused panic attacks starting in 2013. (Tr. 38.) She reported a fast heart beat and cold sweats at the time. (Tr. 38.) Parrinello initially received medication from her nurse practitioner, but she still experienced panic attacks, fast heart beat, felt like she couldn't breathe, and felt like everything was closing in on her. (Tr. 39.) She then began seeing Dr. Oruwari in November 2015 so that she could receive "more serious" medication. (Tr. 39-40.) She stated she could no longer push through the panic attacks and could not control them or make them go away. (Tr. 40.) At the time of the hearing, she was fearful of driving and would not go more than 15 miles away from her house alone. (Tr. 40.) She testified that she had full blown panic attacks if she does not recognize her surroundings. (Tr. 40.) Her symptoms include she cannot breathe, her heart races, she breaks out in a cold sweat and she feels like she is dying at least 3 or 4 times per week. (Tr. 40.) Her panic attacks can last up to an hour, but average 25 minutes with a recovery period of 15 to 20 minutes. (Tr. 45.)

Parrinello testified that the panic attacks hit her all at once when she is in an unfamiliar area or under stress. (Tr. 41.) She still has her dog. (Tr. 41.) Her dog can tell when she is having problems and will calm her down. (Tr. 41.) Parrinello stated that she has had these problems since she was a child. (Tr. 41.) She is on three different medications to control her depression and anxiety. (Tr. 43.) She does not have any interest in doing the things she used to do due to the depression. (Tr. 44.) Parrinello testified that the medication was helping and had subsided a lot of the pain that she feels. (Tr. 40.)

Based on the evidence in the record as a whole, the Court finds that the ALJ's conclusion that Parrinello mental impairments were not severe is supported by substantial evidence in the record as a whole. The only substantive comments in the medical record regarding Parrinello's mental health relate to her discussing the potential loss of her dog due to a fee at her rental property. There are no notes from the counselor Parrinello claims that she visited. Dr. Oruwari's medical notes only include Parrinello's demographics, diagnosis, and the name of her medication. (Tr. 414-15, 430-34, 448.) The medical records suggest that Parrinello's mental impairments were controlled by medication. Parrinello's medication dosage has remained stable during her treatment and she testified that the medication was helping her. (Tr. 40, 414-15, 430-34, 448.) "Impairments that are controllable or amenable to treatment do not support a finding of disability." *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009). Parrinello did not meet her burden to show that her mental impairments were severe.

**Credibility Finding**

Next, Parrinello asserts that the residual functional capacity ("RFC") findings are not supported by substantial evidence in the record as a whole, because the ALJ discounted Parrinello's credibility and the third-party function report submitted by her mother. The RFC is

defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[3] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall*, 274 F.3d at 1217. An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d at 907. "[T]he ALJ is not qualified to give a medical opinion but may rely on medical evidence in the record." *Wilcockson v. Astrue*, 540 F.3d 878, 881 (8th Cir. 2008). In making a disability determination, the ALJ shall "always consider the medical opinions in the case record together with the rest of the relevant evidence in the record." 20 C.F.R. §§ 404.1527(b), 416.927(b); *see also Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009). The presence of a medical disability or the requirement for treatment for a disability alone does not make a person disabled. *See Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004) ("That a claimant has medically-documented impairments does not perforce result in a finding of disability.")

The ALJ found that Parrinello had the residual functional capacity to perform sedentary work with additional exertional and non-exertional limitations. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required

---

[3] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

8

occasionally and other sedentary criteria are met." *Id.* In addition to the sedentary exertional level, the ALJ included the following additional limitations: (1) no climbing on ropes, ladders, or scaffolds; (2) occasional climbing of stairs, stooping, kneeling, crouching, or crawling; (3) avoid concentrated exposure to extreme cold, vibration, and work hazards such unprotected heights and being around dangerous, moving machinery, (4) avoid concentrated exposure to gas, fumes, odors, dust, and workspace with poor ventilation; and (5) a sit/stand option requirement allowing for a change of position every 30 to 60 minutes at a time while remaining at the workstation with no loss in production. (Tr. 15-16.)

In considering subjective complaints, the ALJ must fully consider all of the evidence presented, including the claimant's prior work record, and observations by third parties and treating examining physicians relating to such matters as:

(1) The claimant's daily activities;

(2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) Any precipitating or aggravating factors;

(4) The dosage, effectiveness, and side effects of any medication; and

(5) The claimant's functional restrictions.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). It is not enough that the record contains inconsistencies; the ALJ is required to specifically express that he or she considered all of the evidence. *Id.* Although an ALJ may not discredit a claimant's subjective pain allegations solely because they are not fully supported by objective medical evidence, an ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir.

9

2006). The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. *Id.* Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988). "While the extent of daily living activities does not alone show an ability to work, such activities may be considered along with other evidence when evaluating a claimant's credibility." *Walker v. Colvin*, 124 F.Supp. 3d 918, 936 (E.D. Mo. 2015).

The ALJ considered several factors in evaluating Parrinello's credibility. All of the factors evaluated by the ALJ can be considered when assessing credibility in a social security disability case and were supported by the record. *See Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008) (If an ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so, deference is given to the ALJ's credibility determination). As an initial matter, Parrinello stopped working due to pre-term labor not due to any impairments being considered regarding her disability claim. *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) (ALJ can consider that claimant left work for reasons other than disability). The ALJ also found that Parrinello had routine and conservative treatment for her physical impairments. *Moore v. Astrue,* 572 F.3d 520, 524-25 (8th Cir. 2009) (appropriate for ALJ to consider conservative or minimal treatment in assessing credibility). Parrinello took care of her children and a pet, prepared simple meals, drove a car, shopped in stores, visited friends, and managed her money. *Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000) (ALJ could consider that claimant functioned as the primary caretaker for her home and two small children). The ALJ also noted that Parrinello has only worked sporadically since 2004. *Walker,* 124 F.Supp.3d at 936 (the ALJ was entitled to

discredit plaintiff's credibility where he had a sporadic pre-alleged onset work record reflecting low earnings and multiple years with no reported earnings). Based on the foregoing, the ALJ's credibility determination is supported by substantial evidence in the record as a whole and Plaintiff has not met her burden to establish a more restrictive RFC.

**Vocational Expert Testimony**

Finally, Parrinello contends that the hypothetical question to the ALJ does not capture the concrete consequences of her impairments, therefore, the vocational expert's testimony does not represent substantial evidence. "Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question." *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). A "hypothetical question posed to a vocational expert must capture the concrete consequences of claimant's deficiencies." *Pickney*, 96 F.3d at 297. "[T]he ALJ's hypothetical question must include those impairments that the ALJ finds are substantially supported by the record as a whole." *Id.* at 296. "However, the hypothetical need only include those impairments which the ALJ accepts as true." *Grissom v. Barnhart*, 416 F.3d 834, 837 (8th Cir. 2005).

As previously stated, the Court found that the ALJ's RFC determination was supported by substantial evidence in the record as a whole. The hypothetical question included all of Parrinello's limitations that the ALJ found to be credible. Therefore, the hypothetical question to the vocational expert was proper and the vocational expert testimony constituted substantial evidence supporting the Commissioner's denial of benefits. *See LaCroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006).

**Conclusion**

The Court finds that substantial evidence supports the ALJ's decision as a whole. As noted earlier, the ALJ's decision should be affirmed "if it is supported by substantial evidence, which does not require a preponderance of the evidence but only enough that a reasonable mind would find it adequate to support the decision, and the Commissioner applied the correct legal standards." *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014). The Court cannot reverse merely because substantial evidence also exists that would support a contrary outcome, or because the court would have decided the case differently. *Id.* Substantial evidence supports the Commissioner's final decision.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. [Docs. 1, 17.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Andrew M. Saul for Nancy A. Berryhill in the court record of this case.

_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of July, 2019.